**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                        :
ROBERT H. GROMAN and HELGA HENSING, as
Co-Executors of the Last Will and Testament of          :

CHRISTO BYRON PAPPAS,                     : Case No. 07-CV-2635
    a/k/a C. BYRON PAPPAS,
    a/k/a CHRIS PAPPAS,                       :
    a/k/a C.B. PAPPAS,                        :
    a/k/a CHRISTO PAPPAS,                     :

                Plaintiffs/Petitioners,          :

        -against-                           :

NICHOLAS COLA,                                          :

            Defendant/Respondent.               :

                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFFS/PETITIONERS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO REMAND**


FARRELL FRITZ, P.C.
*Attorneys for Plaintiffs/Petitioners*
1320 RexCorp Plaza
Uniondale, New York 11556
(516) 227-0700

*Of Counsel*:
    James M. Wicks
    Aaron E. Zerykier
    Frank Santoro

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ..................................................................1

BACKGROUND .........................................................................................2

ARGUMENT ...............................................................................................5

Point I

THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
THIS PROCEEDING UNDER THE PROBATE EXCEPTION TO DIVERSITY ...............5

Point II

THE ESTATE SHOULD BE  AWARDED ITS COSTS AND ATTORNEYS' FEES ...........8

CONCLUSION ............................................................................................9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barash v. Northern Trust Corporation, et al.,*
  2005 WL 3088695 (E.D.N.Y. Nov. 17, 2005)..............................................................7

*Beth Israel Medical Center v. Sciuto,*
  1993 WL 258636 (S.D.N.Y. July 9, 1993) ..................................................................5

*Bryant v. J.D. Britt*, 420 F.3d 161 (2d Cir. 2005)..............................................................9

*Carvel v. Carvel Foundation Inc.,*
  2007 WL 2198159 (2d. Cir. August 1, 2007) ..............................................................8

*Codapro Corp. v. Wilson,*
  997 F.Supp. 322 (E.D.N.Y. 1998) ...............................................................................5

*Frontier Insurance Co v. MTN Owner Trust,*
  111 F.Supp.2d 376 (S.D.N.Y. 2000)............................................................................5

*Lefkowitz v. Bank of New York,*
  2007 WL 1839756 (2d Cir. June 28, 2007) ..............................................................7-8

*Markham v. Allen,*
  326 U.S. 490 (1946)......................................................................................................5

*Marshall v. Marshall,*
  547 U.S. 293, 126 S.Ct. 1735 (2006)....................................................................5-6, 6

*Morgan Guaranty Trust Co. of New York v. Republic of Palau,*
  971 F.2d 917 (2d Cir. 1992)..........................................................................................8

*Murray v. Hy Cite Corporation/Royal Prestige,*
  150 F.Supp.2d 527 (E.D.N.Y. 2001) ...........................................................................5

*Sagliocca v. Sagliocca,*
  2006 WL 2811616 (N.D.N.Y. Sept. 28, 2006)............................................................7

### STATE CASES

*Estate of Morris Strickler,*
  10/20/94 N.Y.L.J. 26, (col. 2) (Surr. Ct. Nassau County 1994) ...................................7

*In re Van Valkenburgh's Will,*
  164 Misc. 295 (Surr. Ct. Kings County 1937)...........................................................6-7

## FEDERAL STATUTES

28 U.S.C. § 1447.................................................................................................1, 5, 8

Robert H. Groman ("Groman") and Helga Hensing ("Hensing", and together with Groman, the "Co-Executors"), as co-executors of the Last Will and Testament of Christo Byron Pappas ("Pappas"), a/k/a C. Byron Pappas, a/k/a Chris Pappas, a/k/a C.B. Pappas a/k/a Christo Pappas (the "Estate"), respectfully submit this Memorandum of Law in support of their motion to remand this proceeding to the New York County Surrogate's Court, pursuant to 28 U.S.C. § 1447 and awarding the Estate its costs, including disbursements and attorneys' fees, pursuant to 28 U.S.C. § 1447(c).

<u>PRELIMINARY STATEMENT</u>

This proceeding directly affects the assets and property of an estate which is under the exclusive jurisdiction of the New York County Surrogate's Court. Therefore it should be remanded to the New York County Surrogate's Court, from which it was removed and where it properly belongs.

This proceeding was commenced by the Estate for an upward adjustment of the purchase price of the stock of a privately held company which was sold by the Estate to Cola. At the time of the closing of the transaction, the Estate and Cola entered into an agreement, by which each party reserved its right to seek an adjustment of the purchase price. In response to the Estate's seeking an upward adjustment of the purchase price Cola brought counterclaims seeking a downward adjustment – *i.e.* he seeks to have this Court determine that the Estate is obligated to pay him back a portion of his purchase price.

Cola's counterclaim, and the Estate's affirmative claims, clearly involve having this Court exercise control over the *res* of the Estate which is in the custody of the New York County Surrogate's Court. However, this Court lacks the jurisdiction to hear this proceeding because of the probate exception to federal court jurisdiction. Accordingly, Cola's removal of

1

this proceeding, based upon diversity grounds, was specious and defective and this proceeding

must be remanded to the New York County Surrogate's Court. Moreover, because such

removal was facially improper, this Court should award the Estate its costs and expenses,

including attorneys' fees, incurred as a result of the removal.

## BACKGROUND

Prior to the Fall of 1993 Pappas was the sole shareholder of Byron Chemical Company,

Inc. ("Byron"). Affidavit of Robert Groman, sworn to on August 23, 2007 (the "Groman Aff."),

at ¶ 9. From the Spring of 1994 until his death, Pappas owned 82% of the shares in Byron. *Id.*

at 10.

Byron was a small, but financially successful corporation organized and operating under

the laws of the State of New York, and is an importer and distributor of active pharmaceutical

ingredients ("APIs") used to manufacturer generic pharmaceutical products. Groman Aff. at ¶

11.

In 1993 Pappas decided to gift to two of his employees, Cola and Laura Candela

("Candela") 9% each of the stock of Byron. Groman Aff. at ¶ 12. On September 23, 1993,

Byron, Pappas, Cola and Candela entered into a Shareholder Agreement and Irrevocable Proxy,

which was amended on December 23, 2002 (the "Shareholder Agreement"). *Id.* at ¶ 13.

Pappas died on June 6, 2003. Groman Aff. at ¶ 2. At the time of his death he was a

resident and domiciliary of the City and State of New York, and his Last Will and Testament

was admitted to probate by the New York County Surrogate's Court on October 23, 2003. *Id.* at

¶¶ 2-5.

The Shareholder Agreement provided, *inter alia*, that upon the death of a shareholder

that shareholder's shares will be sold to the other shareholders. Groman Aff. at ¶ 14; *See also*

2

Exh. "A" to Groman Aff. The Shareholder Agreement also provided a formula by which such sale price would be determined. *Id.* at 15.

Specifically, the Shareholder Agreement provided that the purchase price of a deceased shareholder's shares would be calculated by either 1) using the book value of Byron, as set forth on the balance sheet attached to the most recent United States Corporate Income Tax return filed prior to the date of death or 2) using the book value as shown on Byron's books and records as determined, in writing, by Byron's accountant. Groman Aff. at ¶ 15; *See also* Exh. "A" to Groman Aff.

Pursuant to the Shareholder Agreement, on December 22, 2003, Cola purchased 82 shares (or 41%) of Byron (the "Stock Sale Closing"). Groman Aff. at ¶ 17. Candela, who had the option of also making a similar purchase declined to do so. *Id.* As part of the Stock Sale Closing Cola tendered to the Estate, in consideration for the purchased shares at a total price of $1,721,081.80, a check in the sum of $172,108.18 and the balance by a non-negotiable promissory note in the amount of $1,548,973.00 payable to the Estate (the "Note"). *Id.* at ¶ 18.

At the time of the Stock Sale Closing there was a disagreement as to the accuracy of the balance sheet attached to Byron's 2002 tax returns (the most recent tax returns at the time of the transaction). Groman Aff. at ¶ 19. Therefore at the closing Cola and the Estate also entered into a Price Adjustment Agreement (the "Price Adjustment Agreement"). *See* Exh. "B" to Groman Aff. Pursuant to the terms of the Price Adjustment Agreement both the Estate and Cola reserved the right to challenge the purchase price paid by Cola for the shares he purchased. Groman Aff. at ¶ 20.

In the event that it is determined that the 2002 balance sheet underreported the book value Byron, Cola is obligated to tender to the Estate a "Supplemental Note" for the difference

due to the Estate.  Groman Aff. at ¶ 21.  In the event that the book value of Byron was over

reported, it was agreed that the "note shall be recast" to reflect such lower amount.  *Id.*

Based upon the parties' agreements, as set forth in the Price Adjustment Agreement and

the Shareholders Agreement, the Estate commenced a proceeding in the New York County

Surrogate's Court for a declaration that the purchase price must be adjusted upward, to reflect

upward inventory adjustments, and for a determination of the amount of such upward

adjustment.  Groman Aff. at ¶ 22; *See also* Exh. "C" to Groman Aff.

Cola removed this proceeding from the New York County Surrogate's Court to this

Court based upon diversity of citizenship.  Groman Aff. at ¶ 23; *See also* Exh. "D" to Groman

Aff.  Cola also brings a counterclaim in which he seeks a declaration that at the time of the

Stock Sale Closing Byron had a negative book value and that therefore the "Estate is liable to

Cola for the money he paid at closing and the amount he has so far paid on the Note in the

amount of $1,215,937.17," "declaring the Note null and void," and that Cola "should be relieved

from paying the remainder of the Note in the amount of $695,882.66 plus interest of

$39,623.91."  *See* Exh. "E" to Groman Aff. at ¶ 122 and "Wherefore" clause.

Essentially, Cola seeks to have this Court determine that the Estate, a *res* which is in the

custody of the New York County Surrogate's Court, is obligated to pay him over $1.2 million.

## ARGUMENT

"Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 324 (E.D.N.Y. 1998); *see Frontier Ins. Co v. MTN Owner Trust*, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000) (strictly construing removal jurisdiction because removal "abridges the deference courts generally give to a plaintiff's choice of forum").

Furthermore, "all doubts [concerning removal] should be resolved in favor of remand." *Codapro Corp.* 997 F. Supp. at 325. The burden of establishing federal jurisdiction is on the party seeking removal. *See id*; *Murray v. Hy Cite Corporation/Royal Prestige*, 150 F.Supp.2d 527 (E.D.N.Y. 2001) ("the burden of establishing that a case has been properly removed is solely on the removing party") (citing cases). "Remand is warranted under 28 U.S.C. § 1447(c) where the federal court lacks removal jurisdiction." *Beth Israel Medical Center v. Sciuto*, 1993 WL 258636, * 1 (S.D.N.Y. July 9, 1993)

Here, this proceeding should be remanded to the New York County Surrogate's Court because this Court lacks jurisdiction under the probate exception to federal diversity jurisdiction.

### Point I

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS PROCEEDING UNDER THE PROBATE EXCEPTION TO DIVERSITY

This case lies outside the jurisdiction of this Court based on the probate exception to federal diversity jurisdiction which restricts federal courts from hearing cases involving the disposal of property that is within the custody of a state probate court.

The probate exception to federal jurisdiction has a long history and is rooted in Congress' statutory grant of diversity jurisdiction to the federal courts in 1789. *Markham v. Allen*, 326 U.S. 490, 494 (1946). While this exception has been described as "one of the most mysterious and

esoteric branches of the law of federal jurisdiction" (*Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735 (2006)), it has recently been readdressed and elucidated by the Supreme Court.

In *Marshall* the Supreme Court revisited the "probate exception" to federal jurisdiction. In doing so the Supreme Court, in its own words, found that "lower federal courts have puzzled over the meaning" of the prior seminal Supreme Court decision in *Markham*, and sought to clarify such exception.  126 S.Ct. at 1748.

The Supreme Court explained that the probate exception applies:

> when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of an estate; **it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court**.

(internal citations omitted) (emphasis added)

Both the Estate's affirmative claims and Cola's counterclaims seek to affect the monies owed to the Estate by virtue of the Shareholders Agreement, the Price Adjustment Agreement and the Note.  There is no doubt that the "property" the Estate and Cola seek the "disposal of" is a *res* within the exclusive jurisdiction and custody of the New York County Surrogate's Court.

The fact that Byron's stock is "property that is in the custody of the state probate court" was eloquently explained over seventy years ago in *In re Van Valkenburgh's Will*, (164 Misc. 295 (Surr. Ct. Kings County 1937):

> …in any proceeding the surrogate is, in effect, an additional party to every litigation affecting the disposal of the assets of the deceased.  This conception is evident in innumerable places in the Surrogate's Court Act.  Under the system of estate administration in vogue in this state, he is, in effect, the ultimate guardian of the property of the decedent and it is his duty, so far as may lie in his power, to see to it that the wishes of the decedent in the devolution of his property shall be respected and effectuated.

164 Misc. at 298. See also, *Estate of Morris Strickler*, 10/20/94 N.Y.L.J. 26, (col. 2) (Surr. Ct. Nassau County 1994) ("The function of the Surrogates' Courts in general is to effectuate the devolution of the property of a decedent and their jurisdiction is primarily and essentially *in rem*, in respect to property of the decedent").

The subject of this litigation – namely the proper purchase price of the Byron stock sold to Cola – would also have an effect on the interim accounting proceeding already filed in the New York County Surrogate's Court; providing another manner in which this proceeding would interfere with the probate of the estate. Groman Aff. at ¶ 27; see e.g., *Sagliocca v. Sagliocca*, 2006 WL 2811616, * 2 (N.D.N.Y. Sept. 28, 2006) (dismissing litigation based upon the probate exception to federal jurisdiction; finding that litigation over assignment of a note "would interfere with the Surrogate's authority to both conduct probate . . . and would interfere with the Surrogate's administration of the estate"); *Barash v. Northern Trust Corporation, et al.*, 2005 WL 3088695, *2 (E.D.N.Y. Nov. 17, 2005) (dismissing litigation over trust assets based upon probate exception to federal diversity jurisdiction; "[h]ere, the exercise of jurisdiction would impermissibility interfere with the Florida probate proceedings as the accountings provided by that court could potentially be rendered meaningless should this Court entertain this case.").

The probate exception was also recently applied by the Second Circuit in *Lefkowitz v. Bank of New York*, (2007 WL 1839756 (2d Cir. June 28, 2007)) where the court determined that because of the exception federal jurisdiction was lacking over claims involving the disposition of an estate's monies. In *Lefkowitz*, certain of the plaintiff's claims – like those raised by Cola here – sought the "disgorgement of funds that remain under the control of the Probate Court." 2007 WL 1839756 at *4.

In affirming the lower court's dismissal of these claims, the Second Circuit held:

> To provide the relief that Plaintiff seeks [in these claims] the
> federal court would have to assert control over property that
> remains under the control of the state courts. Because a federal
> court may neither 'dispose of property that is in the custody of a
> state probate court' nor take over the administration of estate assets
> pending in probate court, the district court correctly determined

that under the probate exception it lacks jurisdiction to consider
these claims and properly dismissed them.

*Id.* (citing *Marshall*, 126 S.Ct. at 1748). *See also*, *Carvel v. Carvel Foundation Inc.*, 2007 WL

2198159 (2d. Cir. August 1, 2007) (summary order) (affirming the dismissal of federal court

action based upon the probate exception; "plaintiff's action would interfere with a complex

pending proceeding in New York Surrogate's Court concerning the assets and property of the

Estate. Because plaintiff's action 'endeavors to dispose of the property that is in the custody of

the state probate court' the probate exception bars her from maintaining this action in federal

court") (citing to *Marshall*, 126 S.Ct. at 1748).

Based upon the probate exception to federal diversity jurisdiction this Court lacks the

jurisdiction necessary to hear the parties' claims which directly affect the assets and property of

the Estate which are properly litigated before the New York County Surrogate's Court

necessitating a remand of this proceeding to such court.


### Point II

### THE ESTATE SHOULD BE
### AWARDED ITS COSTS AND ATTORNEYS' FEES

28 U.S.C. § 1447, which provides for remand, also provides that:

> An order remanding the case may require payment of just costs
> and any actual expenses, including attorney fees, as a result of the
> removal.

28 U.S.C. § 1447(c).

An award of costs and attorneys' fees under 28 U.S.C. § 1447(c) does not require a

showing of bad faith. *Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 971 F.2d

917 (2d Cir. 1992). Rather this Court may, as other courts have done, merely examine the

"overall fairness given the nature of the case, the circumstances of the remand, and the effect on

the parties." *See Morgan Guaranty* 971 F.2d at 924.

Inasmuch as the Estate, a fiduciary body beholden to its beneficiaries, would not have had to incur the expense of appearing in this action and filing this motion, but for Cola's improper removal, it should be awarded its actual expenses, including attorney fees, as a result of the removal. This remand is not required because of the Estate's actions – the Estate properly brought its proceeding in the New York County Surrogate's Court. Rather, it is Cola's actions which require the remand. It would be overall unfair to the beneficiaries of the Estate to essentially have their distributions "taxed" for the costs of Cola's improvident actions.

This Court would retain jurisdiction to determine an attorneys' fees application after remand. *Bryant v. J.D. Britt*, 420 F.3d 161 (2d Cir. 2005). Accordingly, it is respectfully requested that this court grant such application, with a referral to a Magistrate Judge for a determination as to the calculation of the monies due to the Estate.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this proceeding be remanded to the New York County Surrogate's Court and the Estate be awarded its costs, including attorneys' fees and disbursements.

Dated: Uniondale, New York
       August 24, 2007

                                        Respectfully submitted,

                                        FARRELL FRITZ, P.C.

                                        By: _____
                                        James M. Wicks (JM 0828)
                                        Aaron E. Zerykier (AZ 9270)
                                        Frank T. Santoro (FS 7051)
                                        *Attorneys for Plaintiffs/Petitioners*
                                        1320 RexCorp Plaza
                                        Uniondale, New York 11556
                                        (516) 227-0700